**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE UNIVERSITY OF CHICAGO MEDICAL CENTER d/b/a UNIVERSITY OF CHICAGO HOSPITALS & CLINICS, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13 C 4742 |
| KATHLEEN SEBELIUS, Secretary of the United States Department of Health and Human Services, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The University of Chicago Medical Center ("Hospital") brings this action pursuant to 42 U.S.C. § 1395oo(f)[1] to contest the decision by Secretary of Health and Human Services Kathleen Sebelius ("Secretary") to dismiss its administrative appeal. That appeal -- held before the Provider Reimbursement Review Board (the "Board") -- involved a dispute over the proper amount of reimbursement owed to Hospital under Title XVIII of the Social Security Act (colloquially "Medicare," Sections 1395-1395ccc). Secretary seeks to justify her dismissal of that appeal by asserting that Hospital failed to file a preliminary position paper by the applicable deadline. In turn Hospital contends that the paper deadline had been impliedly vacated and that

---

[1] All further references to Title 42's provisions will simply take the form "Section --," omitting the prefatory "42 U.S.C. §."

Secretary's dismissal and later refusal to reinstate Hospital's administrative appeal was therefore (1) arbitrary and capricious and (2) not supported by substantial evidence.[2]

Hospital and Secretary have filed cross-motions for summary judgment under Fed. R. Civ. P. ("Rule") 56. Both have complied (at least in part) with this District Court's LR 56.1, which has been adopted to facilitate the resolution of Rule 56 motions by smoking out any disputed issues of material fact.[3] Those LR 56.1 statements -- taken together with a substantial administrative record -- reveal that there are no disputed issues of material fact and that Hospital has the right of it: Secretary's actions in this case were indeed arbitrary and capricious and were not supported by substantial evidence. And that being the case, Hospital's motion for summary judgment must be granted and Secretary's corresponding motion must be denied.

---

[2] Hospital also advances a third argument, asserting that the Board's internal rules deviate from that agency's authorizing regulations (see H. Mem. 16-17). This Court need not and does not consider that far-reaching issue in resolving the present case, because Hospital prevails on its two initial arguments.

[3] Although Hospital filed its LR 56.1 statement of material facts, Secretary did not file a comparable statement in support of her own motion. But Secretary has responded to Hospital's initial statement, so that this Court does have each side's version of the relevant facts. And where as here the court's review is limited to a previously established administrative record, rather than evidence drawn from varied sources and proffered in conjunction with a Rule 56 motion, there is no particular need for LR 56.1 statements to be brought into play (so that our District Court typically does not require adherence to those statements in the most frequently encountered situations of that type -- Social Security disability reviews). That is equally true in this case. All of this opinion's references to the initial administrative record will take the form "R. --," while references to the supplemental record will take the form "Supp. R. --." Citations to the parties' memoranda will take the form "H. Mem. --" for Hospital's memorandum in support of its motion, "S. Mem. --" for Secretary's memorandum in support of her cross-motion and in response to Hospital's motion and "H. R. Mem. --" for Hospital's reply memorandum. Finally, citations to Secretary's response to Hospital's LR 56.1 statement take the form "S. R. St. ¶ --."

**Summary Judgment Standards**

Familiar Rule 56 principles impose on a party seeking summary judgment the burden of establishing the lack of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court must "read[ ] the record in the light most favorable to the non-moving party" (St. Louis N. Joint Venture v. P & L Enters., Inc., 116 F.3d 262, 264 (7th Cir. 1997)) although it "is not required to draw unreasonable inferences from the evidence" (id. at 265 n.2). Where as here cross-motions for summary judgment are involved, it is necessary to adopt a dual perspective -- one that this Court has often described as Janus-like -- that sometimes forces the denial of both motions. That potential for such a dual denial does not exist here, however, because the underlying material facts are not in dispute.

**Standard and Scope of Review**

Judicial review of Secretary's Medicare decisions is limited as to both standards and subject matter. As for the former, because Section 1395oo(f)(1) incorporates the Administrative Procedure Act ("APA") as the applicable standard, this Court may "hold unlawful and set aside" Secretary's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A)). This Court may also set aside Secretary's decision if it was "unsupported by substantial evidence" (id. at § 706(2)(E)) -- but Kepple v. Massanari, 268 F.3d 513, 516 (7th Cir. 2001) (internal quotation marks omitted) teaches that the APA's "substantial evidence" standard is extremely deferential to the final agency determination:

> Substantial evidence, although more than a mere scintilla of proof, is no more than such relevant evidence as a reasonable mind might accept to support a conclusion.

Secretary must nonetheless "address[ ] in a rational manner the questions . . . tendered for consideration" (Salameda v. I.N.S., 70 F.3d 447, 451 (7th Cir. 1995)) and must "clearly address

the specific legal and factual issues raised" (People of State of Ill. v. United States, 666 F.2d 1066, 1073 (7th Cir. 1981)).

Applying the general mandate of the APA to the Medicare reimbursement context, Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (internal citations and quotation marks omitted) has emphasized the reviewing court's limited role:

> We must give substantial deference to an agency's interpretation of its own regulations. Our task is not to decide which among several competing interpretations best serves the regulatory purpose. Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation. In other words, we must defer to the Secretary's interpretation unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation. This broad deference is all the more warranted when, as here, the regulation concerns a complex and highly technical regulatory program, in which the identification and classification of relevant criteria necessarily require significant expertise and entail the exercise of judgment grounded in policy concerns.

Thus this Court must not substitute its own judgment for Secretary's, but must instead confine itself to passing on the reasonableness of Secretary's dismissal of Hospital's appeal and to assessing whether that appeal was based on substantial evidence.

### **Statutory and Regulatory Framework**[4]

Medicare provides a federally funded health insurance program for the elderly and disabled. Only Medicare Part A, which authorizes payment for covered care in institutions such as Hospital, is at issue here. Secretary reimburses a qualified healthcare "provider of services" (Section 1395x(u)) for the reasonable cost of providing covered services to eligible Medicare

---

[4] This Court's opinion in Little Co. of Mary Hosp. & Health Care Ctrs. v. Shalala, 994 F. Supp. 950 (N.D. Ill. 1998) contains an extended explanation of the evolution and purpose of the Medicare reimbursement review process. That level of detailed explanation is unnecessary to resolve the current dispute but may aid a reader seeking further context.

beneficiaries through private actors known as Medicare Administrative Contractors ("MACs," formerly termed "fiscal intermediaries").  MACs are private companies under contract with Secretary to pay Medicare claims and audit cost reports (Section 1395kk).  Each provider seeking reimbursement submits an annual cost report to the intermediary (42 C.F.R. § 413.20), which then audits the report, determines the amount of reimbursement due to the provider and issues a Notice of Program Reimbursement for the relevant fiscal year (Sections 1395h, 1395kk-1).

Following the issuance of a Notice of Program Reimbursement, a dissatisfied provider may appeal the MAC's determination to Board.  If certain jurisdictional prerequisites are met, the Board has the power to affirm, modify or reverse the MAC's decisions (Section 1395oo(d)).  Review hearings are governed by rules set by the Board pursuant to its "full power and authority to make rules and establish procedures" (Section 1395oo(e)) -- procedures codified in the Code of Federal Regulations and in Provider Reimbursement Review Board Rules[5] ("Board Rules").  Secretary, acting through the Administrator of the Center for Medicare & Medicaid Services ("CMS Administrator"), may review the matter further either on her own motion or at the provider's request (42 C.F.R. § 405.1875).  Any provider that remains dissatisfied with Secretary's final decision may then seek judicial review in the district courts (Section 1395oo(f)(1)).

---

[5]  Board Rules in effect on January 1, 2013 may be found at http://www.cms.gov/Regulations-and-Guidance/Review-Boards/PRRBReview/Downloads/Copy-1-of-PRRBRules2009_070109.pdf.

**Facts**

Prompting this deadline dispute is Hospital's administrative appeal as to the quantity of Medicare reimbursement funds awarded to it for the fiscal year ended June 30, 2005 ("FY 2005").[6] That FY 2005 appeal is one in a long series of similar disputes, ranging from FY 1996 through FY 2007. In each appeal Hospital had filed a cost report with its MAC, National Government Services ("National"), as required by 42 C.F.R. § 413.20. Hospital remained dissatisfied with the FY 2005 Notice of Program Reimbursement issued by National and appealed the reimbursement award to the Board.

In the conduct of reimbursement appeals, both a hospital and its MAC must comply with filing deadlines set out in CMS regulations and Board Rules. Those sources require parties to file "preliminary" and "final" position papers (Board Rules 25, 27). Preliminary position papers serve to identify the issues, facts and arguments that should be considered by the Board and addressed by the opposing party (Board Rule 25).

Upon receiving notice of a hospital's appeal, the Board sends an acknowledgment to the parties and sets a deadline by which the hospital must either (1) file its preliminary position paper with the MAC or (2) file a proposed "joint scheduling order" with the Board. If a hospital does not timely file either a preliminary paper or a joint scheduling order, regulations permit the Board to dismiss the hospital's appeal (42 C.F.R. § 405.1868(b)):

> If a provider fails to meet a filing deadline or other requirement established by the Board in a rule or order, the Board may --

---

[6] This opinion will use the abbreviation "FY x" to refer to administrative appeals for the fiscal year ending on June 30 of year x. So the appeal for the fiscal year ended June 30, 2007 will be referred to as FY 2007, while the appeal for the fiscal year ended June 30, 2002 will be termed FY 2002.

(1) Dismiss the appeal with prejudice;
(2) Issue an order requiring the provider to show cause why the Board should not dismiss the appeal; or
(3) Take any other remedial action it considers appropriate.[7]

Hospital's alleged failure to comply with a preliminary paper filing deadline is the root cause of this action.

As already mentioned, the present case began as just one of several appeals brought by Hospital, with each appeal corresponding to a single fiscal year. One of the central issues in those successive appeals was eventually resolved by Univ. of Chicago Med. Ctr. v. Sebelius, 618 F.3d 739 (7th Cir. 2010), which dealt with FY 1996. During the long procedural lead-up to that decision the Board placed all of Hospital's other appeals in abeyance (R. 17, 29, 41, 55, 66, 81, 89, 103). After the resolution of the FY 1996 appeal the Board removed the later appeals from the back burner and eventually scheduled simultaneous final position paper deadlines and hearings for eight appeals: FY 1999 through FY 2005 and FY 2007 (R. St. ¶ 8). Those dates were June 1, 2013 for Hospital's final position papers, July 1, 2013 for National's final position papers and September 1, 2013 for the final hearings (R. 38; Supp. R. 58, 72). On April 26, 2012 the Board sent the parties an e-mail setting a deadline of January 1, 2013 for Hospital to submit either a preliminary position paper or a joint scheduling order (R. 77-79).

That initial schedule ultimately proved unworkable. Determining the correct amount of reimbursement depends in part upon numbers drawn from the two prior fiscal years (Section 1395ww(d)(5)(B)(vi)). For that reason -- and in order to facilitate the potential settlement of the appeals -- Hospital (with National's consent) filed a letter ("Scheduling Letter") with the Board

---

[7] In practice only the first of these three options is generally utilized by the Board: Board Rule 23.4 specifies that if a hospital fails to file a preliminary paper or a proposed scheduling order, the case will be dismissed.

asking it to reschedule the eight appeals sequentially by fiscal year (R. 66-67). Hospital's Scheduling Letter set out a proposed schedule for the parties' final position papers and hearings for each of the eight appeals (id.) -- a schedule that the Board ultimately adopted (R. 48-51). For the FY 2005 appeal that revised schedule set a September 1, 2013 deadline for Hospital's final position paper, with October 1, 2013 set for National's final position paper and December 2, 2013 set for a final hearing date (R. 58-63). Neither Hospital's scheduling request nor the Board's letter acceding to that request made any mention of the preliminary position paper for FY 2005 (or any other year). In fact that January 1, 2013 deadline went entirely undiscussed by both parties and by the Board.

FY 2002 Appeal

Because Hospital's argument as to this FY 2005 case hinges in large part on the schedule changes in the FY 2002 proceeding, that proceeding warrants separate discussion. Notably, the revised schedule proposed by Hospital and accepted by the Board created a conflict in the paper deadlines for the FY 2002 appeal: National's original preliminary paper deadline fell one month after the revised deadline for its final position paper (R. 34-35, 40-43). Apparently confused by that overlap, National communicated with Maureen Sacratini ("Sacratini")[8] in Board's Division of Jurisdiction and Case Management. According to National's records, Sacratini initially suggested that National file only its final position paper and not a preliminary position paper (R. 47). On March 25, 2013 the Board overruled Sacratini and instructed National to file a preliminary position paper as scheduled, but neither National's initial confusion nor the Board's instructions appear to have been conveyed to Hospital.

---

[8] Although Sacratini is identified only as "Maureen" in the administrative record, Hospital asserts that the reference is to Ms. Sacratini, and Secretary does not appear to disagree.

Failure To File and Dismissal of the FY 2005 Appeal

January 1, 2013 passed without Hospital having filed its preliminary position paper for FY 2005. On April 25, 2013 (one month after the Board informed National that it would in fact need to file a preliminary paper for FY 2002 and nearly four full months after the "missed" FY 2005 preliminary paper deadline) the Board dismissed Hospital's FY 2005 appeal for its failure to submit either a preliminary position paper or a joint scheduling order (R. 44). Hospital immediately petitioned the Board to reinstate the FY 2005 appeal, arguing (1) that Hospital's May 24, 2012 Scheduling Letter constituted a joint scheduling order or in the alternative (2) that the overlapping deadlines in the FY 2002 appeal impliedly repealed the earlier-set preliminary position paper deadlines for all eight linked appeals, including the FY 2005 appeal at issue here (R. 31-33).

On May 17, 2013 the Board sent an e-mail denying Hospital's request for reinstatement, finding that the Scheduling Letter did not constitute a joint scheduling order because it failed to satisfy the basic requirements of such an order (R. 24-26). As for Hospital's second argument -- that the conflict created in the FY 2002 schedule impliedly repealed the FY 2005 preliminary paper deadline -- the Board had this to say (R. 25):

> Finally, contrary to the Representative's assertion in its request for reinstatement, the Board notes that preliminary position paper deadlines never overlapped with either the initial, or revised, final position paper due dates in this case.
>
> Based on these factors, the Board does not find good cause for reinstatement and hereby denies the Representative's request. The case remains in closed status.

Hospital then requested that the CMS Administrator review and reverse the Board's dismissal, but the CMS Administrator declined review (R. 1, 3-6). Hence the Board's dismissal

- 9 -

of, and its refusal to reinstate, Hospital's FY 2005 appeal stands as Secretary's final decision, and Hospital properly sought judicial review by this Court (Section 1395oo(f)(1)).

### Secretary's Decision Was Arbitrary and Capricious

Both parties agree that under ordinary circumstances the Board has ample power to dismiss an administrative appeal for failure to meet preliminary paper deadlines. Secretary devotes several pages of her responsive memorandum to demonstrating Board's authority to dismiss (see S. Mem. 6-9), but that argument -- though not exactly a red herring -- is quite beside the point: Hospital is not so foolish as to suggest that the Board ordinarily lacks the power to dismiss an appeal when a provider fails to meet deadlines. Instead Hospital contends that the factual circumstances of this case were so confusing that no reasonable litigant could have understood that the preliminary paper deadline remained in effect or would be enforced against it, so that Secretary's dismissal of the FY 2005 appeal was arbitrary, capricious and an abuse of discretion. And on that score Hospital is clearly right.

Hospital begins by pointing out that its Scheduling Letter (and the Board's acceptance of that letter's proposed schedule) created a clear deadline conflict in the FY 2002 appeal: National's _final_ position paper was now due a full month before its _preliminary_ position paper. That placement of the cart before the horse completely defeats the stated purpose of the preliminary position paper: to foster "efficient use of the administrative review process," provide "all available documentation necessary to give the parties a thorough understanding of their opponent's position" and state material facts and controlling authority supporting each side's position (Rules 23.3, 25.1). Of course a preliminary paper can scarcely be used to apprise the other side of positions or to provide helpful documentation for preparing final position papers if it is not to be filed until a month _after_ those final position papers.

That being so, Hospital would have been fully justified in believing that the revised schedule for FY 2002 impliedly repealed the preliminary position paper deadline in that case. And if that preliminary deadline had been repealed, why should the deadline in the FY 2005 appeal (which both sides had treated in the scheduling process as of a piece with the FY 2002 appeal) be treated differently?

With no logical response to that contention coming to mind, the Board seeks to discount the FY 2002 conflict entirely, arguing that a conflict in that appeal is of no relevance to the FY 2005 case currently before this Court. But that makes no sense. Both FY 2002 and FY 2005 dealt primarily with the same issues, both were initially scheduled for briefing and hearing on the same days and both had their final position paper deadlines simultaneously revised by Hospital's Scheduling Letter. Those two appeals were clearly linked, and a litigant would have had no reason to believe that a revised schedule that vacated the FY 2002 preliminary paper deadline would leave in place the FY 2005 preliminary paper deadline.

That result is also in sync with an aspect of the Board's prior conduct in connection with the FY 1997 and FY 1998 settlements (which were specifically referred to in Hospital's Scheduling Letter, where Hospital expressed a desire to achieve a similar resolution in the proceedings to come). In both of those prior appeals the Board had eliminated entirely the requirement for preliminary position papers (Supp. R. 24-27, 36-39), and none were filed. When the Board accepted the proposed schedule in Hospital's Scheduling Letter, Hospital could reasonably have concluded that the lack of any mention of the preliminary paper deadline -- taken together with the reference to the FY 1997 and FY 1998 cases -- obviated that January 1 deadline.

Strict enforcement of the January 1st preliminary paper deadline makes even less sense when considered in light of that paper's purpose. It will be recalled that the Board's initial schedule placed the due date of Hospital's final paper (June 1, 2013) five months after the date set for the preliminary paper filing (January 1, 2013). But if Secretary's argument were accepted, the Board's decision to reschedule the FY 2005 deadlines would have extended the gap between the preliminary and final papers to a full eight months. That extra time would have provided no benefit to any of the parties, and Hospital would have had no reason to believe that Board had acted in such a manner.

In fact, retaining the preliminary paper deadline would have been actively detrimental to the parties' stated motivation for rescheduling. Hospital's Scheduling Letter specified that the extended schedule was designed to "enable the parties to exchange documents in an orderly fashion and discuss settlement" (R. 66). But the Board's Rule 25.2 specifies that parties must exchange "all available documentation" along with their preliminary position papers. If the revised final paper deadlines did not also extend the preliminary paper deadlines, Hospital and National would not have gained additional time to exchange documentation -- and so a major purpose of the Scheduling Letter would be defeated.

Furthermore, it has already been noted that the resolution of issues in later fiscal year appeals depended upon the outcome of earlier appeals. But under Secretary's proposed interpretation of the schedule, the FY 2005 <u>preliminary</u> paper would have been due before the <u>final</u> position papers for FY 2002, 2003 and 2004 (R. 67). If so, Hospital would have had to stake out its position for FY 2005 even before it had firmed up its arguments as to the correct values for those earlier fiscal years, once again frustrating a major goal of the Scheduling Letter.

Even Hospital's MAC opponent, National, appears to have been confused as to the continuing validity of the preliminary paper deadlines. In an initial e-mail to National about the FY 2002 appeal, Sacratini told National that she did not think it would need to file preliminary papers at all in that proceeding (R. 46-47). Only later did another Board representative give National the "news" that preliminary papers would in fact be necessary (R. 45). Neither of those conversations was ever relayed to Hospital. That background may explain why the MAC did not object to Hospital's request to reinstate the FY 2005 appeal: Apparently National shared Hospital's confusion as to the continuing existence of the preliminary paper deadlines.

Full power is conferred on the Board to extend or eliminate its own preliminary paper deadlines (see 42 C.F.R. § 405.1853(b)). One perfectly reasonable view of the Board's actions in this case -- not the only possible reading, but most likely the best -- is that the Board's revised schedule impliedly repealed the earlier January 1, 2013 deadline. That being so, Hospital could not reasonably have been expected to realize that the preliminary position paper deadline was still in effect. In sum, the Board acted without granting Hospital adequate notice, yet it somehow expected Hospital to conform its conduct to requirements that were far from clear -- and when Hospital failed to read the Board's collective mind, it suffered the dismissal of its appeal. If that is not arbitrary and capricious, those words have no meaning.[9]

---

[9] Furthermore, the Board had options less drastic than dismissal available to it in the case of a missed deadline -- the regulations alternatively permit the Board to issue an order requiring the provider to show cause or to take "any other remedial action it considers appropriate" (42 C.F.R. § 405.1868(b)).

## Secretary's Decision Was Not Supported by Substantial Evidence

Hospital also asserts that this action should be remanded because Secretary's decision was not supported by substantial evidence. Hospital argues that Secretary entirely ignored one of its two primary arguments for reinstatement of the appeal: its assertion that the conflict between the paper deadlines for the FY 2002 appeal impliedly vacated the preliminary paper deadlines for both FY 2002 and FY 2005. Failure to consider such a central contention, says Hospital, means that Board's decision was not based on substantial evidence.

Of course an agency engaged in adjudication must "address[ ] in a rational manner the questions that the [litigants] tendered for consideration" (Salameda, 70 F.3d at 451) -- and that necessarily requires it to "clearly address the specific legal and factual issues raised" (People of State of Ill., 666 F.2d at 1073). Secretary claims that those requirements were satisfied in this case, but a close examination of the Board's decision refusing to reinstate the appeal demonstrates that it entirely misapprehended or ignored Hospital's argument.

That argument, as expressed in Hospital's May 15, 2013 letter requesting reinstatement, is stated simply and clearly (R. 18):

> Even if the May 24, 2012 letter is not considered to be a JSO, the Board nonetheless waived preliminary papers by accepting the parties' proposed schedule and then making it impossible for the Intermediary to comply with the FY 2002 preliminary paper deadline. All hearings were rescheduled as a batch to facilitate sequential resolution. If the previous FY 2002 preliminary paper deadline was after the new final position paper deadline, the Provider could reasonably presume that the only applicable deadlines were for final position papers and the hearings themselves.

That prompted only a single Board sentence in response (R. 25):

> Finally, contrary to the Representative's assertion in its request for reinstatement, the Board notes that preliminary position paper deadlines never overlapped with either the initial, or revised, final position paper due dates established for this case.

- 14 -

Nowhere does the Board's denial mention FY 2002, either expressly or impliedly. Instead the Board appears to misconstrue Hospital's argument as being that the deadlines for the <u>FY 2005</u> appeal conflicted, when Hospital's position was instead that the deadlines in the <u>FY 2002</u> case conflicted and that such conflict must be considered in looking at the FY 2005 appeal. That complete failure by the Board to mention the factual details of the FY 2002 appeal (or Hospital's accompanying argument as to the legal ramifications of those facts) can hardly qualify as "addressing in a rational manner the questions . . . tendered for consideration" (<u>Salameda</u>, 70 F.3d at 451) or as "clearly address[ing] the specific legal and factual issues raised" (<u>People of State of Ill.</u>, 666 F.2d at 1073).

Nor was Hospital's position on that score a minor issue glancingly mentioned or buried in a footnote. Hospital fronted the issue of the FY 2002 deadline overlap in the opening paragraph of its May 15, 2013 letter requesting review of Board's dismissal. Indeed, it presented that argument as the second of its two primary reasons for reinstatement (see R. 15). That request for reinstatement contains an entire section titled "The Board's Rescheduling of the FY 1999 to 2007 Hearings Waived Preliminary Position Paper Deadlines," and the text following that heading discusses the FY 2002 appeal at length (<u>id.</u> at 17-18). Hospital's argument is also not so obviously incorrect as to warrant being ignored by a reviewer -- on the contrary, this opinion has relied in substantial part on that argument in finding Secretary's action to be arbitrary and capricious.

Board's complete failure to consider one of Hospital's primary arguments necessarily means that the Board's decision was not based on substantial evidence. For that reason too, then, Secretary's refusal to reinstate Hospital's appeal must be overturned.

**Conclusion**

In closing, this opinion must advert to the unfortunate side effect of cases such as this one. Public perception of the Medicare system is often that of an unfeeling bureaucracy stuffed with arcane rules and impossible-to-determine requirements. Some of those complaints are unavoidable collateral consequences of CMS's vast caseload and technical subject matter. But cases such as this one, in which even a sophisticated provider with the aid of counsel cannot decipher the relevant deadline -- and in which failing to meet that deadline results in a complete dismissal of one of a set of linked appeals, with corresponding downstream effects -- do nothing to improve Medicare's reputation. While this Court is certainly not in the business of instructing executive agencies as to how to captain their ships, it respectfully suggests that Secretary ought to consider whether dismissal is truly warranted before taking such action in a case such as this.

For the reasons detailed above, Secretary's dismissal of Hospital's FY 2005 appeal and subsequent refusal to reinstate that appeal were arbitrary, capricious and contrary to law, as well as not supported by substantial evidence. There are no genuine issues of material fact, and hence Hospital is entitled to a judgment as a matter of law. Accordingly Hospital's motion for summary judgment (Dkt. No. 36) must be and is granted and Secretary's motion (Dkt. No. 40) must be and is denied. Secretary's dismissal of Hospital's FY 2005 appeal is reversed, and that appeal is reinstated before the Board for a determination on the merits.

                                                          _____
                                                          Milton I. Shadur
                                                          Senior United States District Judge

Date: July 18, 2014